Filed 11/2/21  P. v. Thomas CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D078289 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD102585) |
| STEVEN GARY THOMAS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Joan P. Weber, Judge.  Reversed and remanded.

Andrea S. Bitar, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Randall D. Einhorn, Deputy Attorneys General for Plaintiff and Respondent.

Steven Gary Thomas, who was convicted of special circumstance felony murder in 1996, appeals the summary denial of his petition for recall and resentencing pursuant to Penal Code section 1170.95.[1]  The trial court denied his petition at the prima facie stage, concluding the jury's special circumstance findings of robbery-murder and kidnapping-murder rendered Thomas categorically ineligible for relief.  To the extent the Supreme Court's postconviction decisions in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*) narrowed special circumstance liability for felony murder, the trial court followed case law that would require Thomas to first file a petition for writ of habeas corpus before seeking resentencing under section 1170.95.

For reasons we recently explained in both *People v. Arias* (2021) 66 Cal.App.5th 987, review granted September 29, 2021, S270555 (*Arias*) and *People v. Wilson* (2021) 69 Cal.App.5th 665 (*Wilson*), we are persuaded that a felony murder special circumstance finding predating *Banks* and *Clark* does not categorically render a section 1170.95 petitioner ineligible for relief.  The court erred in denying Thomas's petition solely on that basis.  Given the limited record of conviction before us, we are unable to conclude that the special circumstance findings satisfy *Banks* and *Clark* so as to preclude section 1170.95 relief.  We therefore remand to permit the trial court to assess that matter in the first instance and decide whether Thomas has made a prima facie showing that he is entitled to resentencing relief.

---

[1]     Further undesignated statutory references are to the Penal Code.

FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Murder Conviction and Direct Appeal*[2]

In the early hours of May 8, 1994, Karl S., Misty H., and Susan W. returned to San Diego from a workshop in Borrego Springs. Karl pulled his red Toyota up to Susan's apartment in Point Loma shortly after midnight, planning to drop her off first before taking Misty home. The three unloaded items from the car. As the two women were upstairs in Susan's apartment, Karl went out to bring up the final load. Susan and Misty grew concerned after twenty minutes passed with no sign of Karl and peered out the window. They did not see Karl or his car but noticed Misty's blue suitcase and bags of groceries lying in the street. Around 1:00 a.m., Susan's neighbor Michael C. saw two African American men walking down Mentone Street. One said to the other, " 'This one over here, man.' " Michael later saw the same two men in a red Toyota; the car backed up over some luggage and sped off. At 6:30 the next morning, neighbor Charles H. looked outside the window and observed what looked like a bag of trash or a person lying on the ground. When the object was still there an hour later, Charles called police.

Responding law enforcement found Karl's dead body. He had been stabbed five times in the chest with a knife. Around 7:00 a.m., a police community service officer found Karl's car, abandoned with the key on the roof. Palm prints and fingerprints lifted from the vehicle and its contents matched Thomas.

---

[2]    We draw the following facts from our 1997 opinion addressing Thomas's direct appeal from the judgment in *People v. Thomas* (Oct. 21, 1997, D025797) [nonpub. opn.] (*Thomas I*). An affidavit from the court reporter supervisor indicates that transcripts of the original trial have been destroyed (Gov. Code, § 69955, subd. (e)).

Thomas's girlfriend Tijwanna J. indicated that Thomas had left around 7:30 p.m. the night before with Leon McInnis and returned around 3:00 or 4:00 o'clock the next morning. A few days after the homicide, Tijwanna saw McInnis retrieve a knife from the rain gutter of her apartment building and throw it on the ground toward Thomas, who picked it up.[3] Tijwanna described Thomas and McInnis as inseparable, but said neither had a "dominant leadership role." When police interviewed Thomas and told him his prints were recovered from Karl's car, he said a person named Paul Boykin instigated the carjacking and killing, and that Thomas merely went along because Boykin had threatened him with a gun.

The San Diego County District Attorney charged McInnis and Thomas with a series of carjacking incidents, one (Karl's) ending in homicide. The amended indictment alleged that in murdering Karl, Thomas "personally used a deadly and dangerous weapon, to wit, a knife" (§ 12022, subd. (b)). It further alleged the murder occurred while Thomas was engaged in a robbery and in a kidnapping (§ 190.2, subd. (a)(17)).

At trial, the prosecution examined medical officer John Eisele, who opined based on the autopsy that Karl was alive and conscious when he was stabbed. Eisele believed Karl did not try to defend himself and was stabbed while being restrained. Susan, Misty, Michael, and Charles provided circumstantial evidence tending to show that Thomas and McInnis carjacked Karl, rifled through the contents of the vehicle (the robbery), took off with

---

[3] The probation report adds some other details, but it is unclear from our record whether these additional facts were presented to the jury. According to the report, Tijwanna stated that McInnis retrieved the knife from her rain gutter after Thomas tried to do so unsuccessfully. The probation report further relates that when McInnis threw the knife down, Thomas picked it up and "put it in his pocket."

4

him in the car (the kidnapping), drove Karl back and at some point stabbed him before dumping his body and speeding off in his car.

The jury also heard evidence connected to two other charged incidents occurring earlier that week. On May 5, 1994, Thomas and McInnis held up a college student at knifepoint, took his wallet and watch, and forced him to drive in his red Honda to a nearby ATM to withdraw additional money. Thomas and McInnis told the student they would let him go because he had cooperated. When the car was recovered, a suede jacket and tape recorder were missing. In a separate incident on May 7, a parked silver Toyota was stolen. It was found in Point Loma near Susan's apartment, and latent fingerprints lifted from the car matched Thomas.

Defense counsel conceded murder liability but disputed the special circumstance allegations. Under the defense theory, Thomas, who suffered brain damage from a childhood car accident, was not the actual killer (§ 190.2, subd. (b)), did not intend to kill Karl (*id.*, subd. (c)), and was not a major participant in the underlying felonies who acted with reckless indifference to life (*id.*, subd. (d)). Neuropsychologist Dean Delis and a neurologist James Grisolia both examined Thomas and believed his mental faculties would have made him more of a passive follower than a leader.[4] A defense investigator recounted a conversation with Thomas's girlfriend Tijwanna, who described Thomas as being the quieter of the two and McInnis as the leader. Finally, the defense examined pathologist Paul Wolf, who

---

[4] The prosecution presented evidence in rebuttal from radiologists who downplayed the severity of brain damage reflected on Thomas's MRI scan and a psychiatrist who opined that any brain damage would not have impacted his behavior. Delis disputed the psychiatrist's findings on surrebuttal.

5

testified that Karl may have been stabbed while lying on the ground, rather than while restrained as the prosecution's pathologist suggested.

The jury convicted Thomas of first degree murder (§ 187, subd. (a)) and found true allegations that the murder was committed during the commission of a robbery (§ 190.2, subd. (a)(17)(A)), and during the commission of a kidnapping (*id.*, subd. (a)(17)(B)). But the jury determined Thomas *did not* personally use a weapon in Karl's murder.[5] As we explained in our prior opinion, that meant they harbored at least a reasonable doubt whether Thomas was the actual killer and based the true special circumstance findings on Thomas aiding and abetting the killing with intent to kill, or on Thomas being a major participant in the robbery or kidnapping and acting with reckless indifference to human life.[6] In a bifurcated penalty phase trial, the jury returned a verdict of life without the possibility of parole.

Thomas asserted three arguments on appeal. We rejected his challenge to the exclusion of propensity evidence that he claimed tended to paint McInnis as the actual killer. We likewise did not accept his instructional error claim regarding the court's denial of a clarifying instruction on the meaning of "major participant" in section 190.2, subdivision (d). Finally, we

---

[5] By contrast, the jury did find that Thomas personally used a knife in connection with the carjacking, kidnapping, and robbery of the college student on May 5, 1994.

[6] Testimony by a prosecution witness that Karl was restrained while being stabbed could support a theory that Thomas aided and abetted the stabbing with intent to kill (§ 190.2, subd. (c)), but the evidence on this point was in conflict. The defense pathologist testified that Karl could have been stabbed as he lay on the ground. In addition, the defense presented evidence that Thomas had impaired mental capacities to suggest he did not have any intent to kill.

were not persuaded by his multiple punishment claim under section 654. Accordingly, we affirmed the judgment (*Thomas I, supra,* D025797).

B.      *Senate Bill No. 1437*

Effective January 1, 2019, Senate Bill No. 1437 (Stats. 2018, ch. 1015) overhauled sections 188 and 189 to substantially narrow felony murder liability and murder liability under the natural and probable consequences doctrine.  As relevant here, first degree felony murder now requires proof beyond a reasonable doubt that the defendant:  (1) "was the actual killer"; (2) "was not the actual killer but, with intent to kill aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree," or (3) "was a major participant in the underlying felony and acted with reckless indifference to human life." (§ 189, subd. (e).)  These requirements now mirror the requirements for special circumstance felony murder liability under section 190.2, subdivisions (b) through (d).

Beyond amending the substantive requirements for murder liability, Senate Bill No. 1437 also codified a new statute—section 1170.95—which "established a procedure permitting certain qualifying persons who were previously convicted of felony murder or murder under the natural and probable consequences doctrine to petition the courts that sentenced them to vacate their murder convictions and obtain resentencing on any remaining counts." (*People v. Lamoureux* (2019) 42 Cal.App.5th 241, 246 (*Lamoureux*).)

A defendant is eligible for resentencing relief under section 1170.95 "when all of the following conditions apply:  [¶]  (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine.  [¶]  (2) The petitioner was convicted of first

7

degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder.  [¶]  (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a).)

To seek resentencing, a defendant must file a petition that includes a declaration confirming the eligibility criteria above.  (§ 1170.95, subd. (b).) If requested, the court appoints counsel.  (*People v. Lewis* (2021) 11 Cal.5th 952, 963, 966–967 (*Lewis*).)  Each side then submits briefing as to whether the defendant has made a prima facie showing of eligibility.  (*Id.* at p. 966; § 1170.95, subd. (c).)  In deciding this issue, the trial court may rely on the record of conviction to "distinguish petitions with potential merit from those that are meritless." (*Lewis*, at pp. 970–971.)  But it must hew to the narrow scope of the prima facie inquiry, which asks only whether a petitioner's factual allegations, if true, would entitle him or her to relief.  (*Id.* at p. 971.) Courts do not weigh the evidence, exercise discretion, or engage in factfinding.  (*Ibid.*)  The record of conviction may be considered at this stage solely to the extent it *refutes* allegations in defendant's petition.  (*Ibid.*)[7]

If a defendant makes a prima facie showing, the court issues an order to show cause.  (§ 1170.95, subd. (c).)  An evidentiary hearing follows where the prosecution bears the burden of proving beyond a reasonable doubt that

_____

[7]     A record of conviction includes documents that "reliably reflect the conduct of which a defendant was convicted." (*People v. Houck* (1998) 66 Cal.App.4th 350, 356–357, discussing *People v. Reed* (1996) 13 Cal.4th 217, 223.)  That includes appellate opinions, such as a prior opinion on direct appeal. (*Lewis, supra,* 11 Cal.5th at p. 972, citing *People v. Woodell* (1998) 17 Cal.4th 448, 454–457.)  By contrast, the record of conviction excludes matters that do not reveal the basis of the underlying conviction, such as a defendant's postconviction statements contained in a presentence probation report.  (See *People v. Trujillo* (2006) 40 Cal.4th 165, 179.)

the defendant is *ineligible* for resentencing. (*Id.*, subd. (d)(3).) "The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (*Ibid.*) Following the hearing the court must decide whether to grant resentencing relief. If relief is granted, the court will vacate the murder conviction, recall the sentence, and resentence the defendant to a lesser term on any remaining counts. (*Id.*, subd. (d)(1)−(2).)

C.    *Thomas's Resentencing Petition*

Representing himself, Thomas filed a section 1170.95 petition in April 2019 and requested the appointment of counsel. By checking boxes on a preprinted form, he declared that he could no longer be convicted of first degree felony murder based on Senate Bill No. 1437's amendments to section 189, subdivision (e). Specifically, Thomas alleged he was not the actual killer, did not aid the killer with intent to kill, and was not a major participant in the felony who acted with reckless indifference to human life. The People filed an initial response challenging the constitutionality of Senate Bill No. 1437 and claiming that Thomas's special circumstance findings precluded resentencing relief.[8] Attached to the prosecution's brief were the amended indictment, jury verdict forms, trial minutes, and our prior opinion on direct appeal. (*Thomas I, supra,* D025797.)

Appointed defense counsel filed a reply brief arguing the special circumstance findings, which were made by the jury in 1996, did not preclude resentencing relief under section 1170.95. As counsel explained, the Supreme Court's postconviction rulings in *Banks* and *Clark* substantially narrowed the terms "major participant" and "reckless indifference to human life" within the

___

[8]    They do not reassert their constitutionality challenge on appeal. (See *People v. Superior Court* (*Gooden*) (2019) 42 Cal.App.5th 270, 275; *People v. Lamoureux, supra,* 42 Cal.App.5th at p. 246.)

9

special circumstance statute (§ 190.2, subd. (d)).  Accordingly, a felony murder special circumstance finding predating those decisions would not necessarily qualify for felony murder liability under section 189, subdivision (e)(3) as amended by Senate Bill No. 1437.  Counsel acknowledged a split of authority among the courts of appeal on this issue but urged the trial court to follow cases like *People v. Torres* (2020) 46 Cal.App.5th 1168, 1179−1190, review granted June 24, 2020, S262011 (*Torres*) in finding no categorical bar.[9]  In response, the People filed a supplemental brief urging the trial court to reject *Torres* and instead follow cases like *People v. Galvan* (2020) 52 Cal.App.5th 1134, 1142, review granted October 14, 2020, S264284 (*Galvan*) by requiring Thomas to petition for habeas relief under *Banks* and *Clark* before filing a section 1170.95 petition.[10]

In October 2020, the trial court issued an order summarily denying Thomas's section 1170.95 petition.  Following the *Galvan* line of cases, it

---

[9]  See also *People v. Smith* (2020) 49 Cal.App.5th 85, 93–94, review granted July 22, 2020, S262835; *People v. York* (2020) 54 Cal.App.5th 250, 259–261, review granted November 18, 2020, S264954; *People v. Harris* (2021) 60 Cal.App.5th 939, 956–958, review granted April 28, 2021, S267802 (*Harris*); *People v. Secrease* (2021) 63 Cal.App.5th 231, 249–254, review granted June 30, 2021, S268862 (*Secrease*); *People v. Gonzalez* (2021) 65 Cal.App.5th 420, review granted August 18, 2021, S269792; *People v. Pineda* (2021) 66 Cal.App.5th 792, review granted September 29, 2021, S270513; *Arias, supra,* 66 Cal.App.5th 987, review granted; *Wilson, supra,* 69 Cal.App.5th 665.

[10]  See also *People v. Gomez* (2020) 52 Cal.App.5th 1, 17, review granted October 14, 2020, S264033; *People v. Jones* (2020) 56 Cal.App.5th 474, 483–484, review granted January 27, 2021, S265854; *People v. Allison* (2020) 55 Cal.App.5th 449, 457; *People v. Murillo* (2020) 54 Cal.App.5th 160, 168, review granted November 18, 2020, S264978; *People v. Nunez* (2020) 57 Cal.App.5th 78, 95–96, review granted January 13, 2021, S265918; *People v. Simmons* (2021) 65 Cal.App.5th 739, 747−749, review granted September 1, 2021, S270048.

reasoned: "[B]ecause there has been a special circumstance finding that Petitioner was a major participant and acted with reckless indifference to human life, he is precluded from relief pursuant to Penal Code section 1170.95, absent habeas relief as to the special circumstance finding."

## DISCUSSION

Thomas appeals the summary denial of his section 1170.95 petition. Applying de novo review (*Arias, supra,* 66 Cal.App.5th at p. 999, review granted), we agree the court erred in concluding that his pre-*Banks* and *Clark* special circumstance findings constitute a categorical bar to resentencing relief. But that conclusion does not alone require issuance of an order to show cause. (*Arias,* at p. 1004.) For reasons we explain, our limited record requires us to remand to permit the trial court to resume its prima facie inquiry and evaluate whether there is sufficient evidence to support Thomas's special circumstance findings under *Banks* and *Clark*. (*Arias,* at pp. 1005–1006.) If there is, Thomas could not show that he could not be convicted of felony murder following amendments made by Senate Bill No. 1437, and he would be ineligible for resentencing relief. On the other hand, if the evidence is *insufficient*—as it would appear to be based only on the limited record before us—the court must issue an order to show cause.

A.    *The Trial Court Erred in Summarily Denying Thomas's Petition.*

California's special circumstance statute identifies those crimes deemed sufficiently reprehensible to warrant possible punishment by death or life without the possibility of parole (LWOP). (*Banks, supra,* 61 Cal.4th at p. 797.) One such special circumstance applies to murder that takes place in the commission of an enumerated felony. (§ 190.2, subd. (a)(17).) Defendants convicted of first degree felony murder who are not the actual killer can only be guilty of special circumstance felony murder if they aid in the murder with

11

intent to kill (*id.*, subd. (c)) or, lacking an intent to kill, aid in the felony "with reckless indifference to human life and as a major participant." (*Id.*, subd. (d).)

In the last decade, the Supreme Court has substantially narrowed the meanings of the terms "major participant" and "reckless indifference to human life" under section 190.2, subdivision (d). The court held in *Banks* that to assess whether a defendant's participation in activities known to carry a grave risk of death was sufficiently significant to be deemed "major," courts must consider the defendant's role in planning the criminal enterprise and supplying or using lethal weapons; defendant's awareness of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the participants; whether the defendant was at the scene of the killing, in a position to facilitate or prevent the actual murder, and by action or inaction played a particular role in the death; and what the defendant did after lethal force was used. (*Banks, supra,* 61 Cal.4th at p. 803.) As the court explained in *Clark*, similar factors, both subjective and objective, inform whether a defendant acted with "reckless indifference to human life," including a defendant's knowledge that weapons would be used and/or personal use of weapons; his or her knowledge of an accomplice's propensity to kill; the defendant's physical presence at the scene and opportunity to restrain the killer or aid the victim; any efforts taken to minimize the risk of violence in committing the felonies; and the duration of the felony. (*Clark, supra,* 63 Cal.4th at pp. 618–623.)

Thomas was convicted of special circumstance felony murder in 1996, long before the Supreme Court's rulings in *Banks* and *Clark* narrowed such liability under section 190.2, subdivision (d). As the parties note, there is a split among the Courts of Appeal as to whether this type of special

circumstance precludes relief under section 1170.95 absent prior habeas review, and the conflict will be resolved by the California Supreme Court. (See fns. 9 and 10, *ante*.[11]) In the meantime, "[i]t will suffice for us to state that we are persuaded by the logic of the courts that have concluded pre-*Banks* and *Clark* felony-murder special-circumstance findings do not categorically preclude defendants from obtaining resentencing relief under section 1170.95." (*Arias, supra,* 66 Cal.App.5th at p. 1004, review granted; see *Wilson, supra,* 69 Cal.App.5th at p. 673.) "While it is true that the language of section 189, subdivision (e)(3) tracks language that has always been a part of section 190.2, subdivision (d), *Banks* and *Clark* placed new limits on its meaning." (*Secrease, supra,* 64 Cal.App.5th at p. 254, review granted.) Reasonably construed, section 1170.95 requires courts to undertake a *Banks/Clark* review at the prima facie stage for a special circumstance finding made before the *Banks* and *Clark* decisions to preclude resentencing relief under section 1170.95. (*Secrease,* at p. 255.) By summarily rejecting Thomas's petition based solely on the existence of the 1996 felony-murder special circumstance findings, the trial court erred. (*Arias,* at p. 1004.)

B.   *Remand is Necessary for the Trial Court to Determine on a Fuller Record Whether Thomas's Record of Conviction Forecloses Resentencing Relief.*

Although special circumstance findings made before *Banks* and *Clark* do not *automatically* preclude Thomas from resentencing relief, "that fact

---

[11]   The Court will address the following issue in *People v. Strong*: "Does a felony-murder special circumstance finding (§ 190.2, subd. (a)(17)) that was made before [*Banks, supra,* 61 Cal.4th 788] and [*Clark, supra,* 63 Cal.4th 522] were decided preclude a defendant from making a prima facie showing of eligibility for relief under section 1170.95?" (*People v. Strong* (Dec. 18, 2020, C091162) [nonpub. opn.], review granted Mar. 10, 2021, S266606.)

alone does not require us to reverse and remand the matter for the trial court to issue an order to show cause." (*Arias, supra,* 66 Cal.App.5th at p. 1004, review granted.) Instead, appellate courts including ours conduct an individualized review to evaluate whether a jury's pre-*Banks* and *Clark* special circumstance finding meets the *Banks/Clark* criteria. (*Secrease, supra,* 63 Cal.App.5th at p. 225, review granted; *Arias,* at p. 1004; see also *Wilson, supra,* 69 Cal.App.5th at p. 686.) This approach is in keeping with our Supreme Court's recent guidance in *Lewis* that trial court error at the prima facie stage is reviewed for prejudice under state law. (*Lewis, supra,* 11 Cal.5th at pp. 972–974.) The trial court's erroneous conclusion that pre-*Banks* and *Clark* special circumstance findings rendered Thomas ineligible for relief would be harmless under that standard if substantial evidence nonetheless supported the jury's special circumstance findings under *Banks* and *Clark*—in this scenario, Thomas would be unable to show he could *no longer* be convicted of first degree murder, as he would need to do to meet his prima facie burden. (See § 1170.95, subds. (a)(3), (b)(1)(A).) While *Lewis* permits courts to review a defendant's record of conviction to evaluate whether it *refutes* a prima facie showing (*Lewis,* at p. 972 & fn. 6), we explained in *Arias* why such review typically cannot proceed on appeal from an incomplete record. (66 Cal.App.5th at pp. 1004–1006, review granted.)

Our limited record—consisting of the charging document, trial minutes, jury verdicts, and our prior opinion in *Thomas I, supra,* D025797—does not address most of the *Banks/Clark* factors. This appears to have been a circumstantial evidence case. The prosecution pieced together witness accounts before and after the killing to prove that Thomas and McInnis carjacked Karl, drove him somewhere in his car, returned, stabbed him, left the body, and sped away. Thomas's prints were found on the vehicle and its

14

contents; an autopsy sketched out some aspects of the killing; and Tijwanna described what happened to the knife.

But this hazy picture from *Thomas I* leaves much unanswered. Our prior opinion does not mention any evidence regarding Thomas's role in planning the carjacking, whether he was involved in supplying the knife, or his awareness of particular dangers posed given the nature of the crime, weapons used, or past experience with McInnis. The fact that carjacking and vehicular theft incidents earlier that same week left the victims unscathed could support an inference that Thomas would *not* expect any particular dangers in joining another carjacking with McInnis. A jury could reasonably find that Thomas was present at the scene of the killing, but *Thomas I* does not address whether he was in a position to facilitate or prevent the stabbing or played any particular role in it. He sped away sometime after lethal force was used, but it is unclear if he could have otherwise rendered aid. The jury acquitted Thomas of using the murder weapon, and there was conflicting evidence as to whether Karl was restrained while stabbed. On this limited record, only *two* of the *Banks* factors suggesting "major participation" can be found—that Thomas was at the scene of the murder and did not render aid to Karl. While no single *Banks* factor is essential or dispositive (*Banks, supra,* 61 Cal.4th at p. 803), the evidence described in *Thomas I* and the jury's verdicts and findings do not suggest any "participation 'in criminal activities known to carry a grave risk of death'" that "was sufficiently significant to be considered 'major' [citations]." (*Banks,* at p. 803.)

*Thomas I, supra,* D025797 is likewise silent on many of the *Clark* factors signaling a defendant's "reckless indifference to human life." As discussed, a jury could determine Thomas was at the scene and did not render aid, but it also found that Thomas did not use a weapon. Left

15

unanswered are whether Thomas knew a knife would be used or McInnis's propensity to kill; the duration of the felony; and any efforts by Thomas to minimize the risk of violence. (*Clark, supra,* 63 Cal.4th at pp. 618–623.)[12] In short, the limited record of conviction before us does not reveal sufficient evidence to show that Thomas aided and abetted the kidnapping or robbery "with reckless indifference to human life and as a major participant" (§ 190.2, subd. (d)) as those terms are defined in *Banks* and *Clark.* (Compare *People v. Law* (2020) 48 Cal.App.5th 811, 825, review granted July 8, 2020, S262490 [sufficient evidence of *Banks/Clark* factors existed as to defendant who used a gun, was present at the shooting, and "was willingly involved in the violent manner in which his and [his accomplice's] robbery took place"] with *Arias, supra,* 66 Cal.App.5th at p. 1005, review granted [insufficient evidence of *Banks/Clark* factors existed on a limited record that did not address defendant's role in supplying or using weapons, his presence at the scene, his opportunity to prevent the killing or aid the victim, and his awareness of the dangers the robbery would present].)

Faced with an incomplete record, we will follow our approach in *Arias*, remanding to permit the trial court to consider on a fuller record of conviction whether the trial evidence was sufficient to support the jury's felony-murder special circumstance findings consistent with *Banks* and *Clark.* (*Arias, supra,* 66 Cal.App.5th at p. 1006, review granted; see *Secrease, supra,* 63 Cal.App.5th at pp. 264–265, review granted.) Although it appears the original trial transcripts are no longer available from the superior court (*ante,* fn. 2), they might be available from a different source. In keeping with its

---

[12] Thomas sought to introduce propensity evidence to show that McInnis was likely the actual killer. But this evidence was excluded at trial, and there is no indication that Thomas was *aware* of any such propensity to kill at the time of Karl's murder.

16

narrow role at the prima facie stage, the court must consult the available record of conviction solely to see if it *refutes* Thomas's prima facie showing. (*Lewis, supra,* 11 Cal.5th at p. 971; *Wilson, supra,* 69 Cal.App.5th at p. 687 [trial court directed to consider on remand whether "the record of conviction unequivocally negates [defendant's] contentions, rendering him unable to meet his burden"].) If sufficient evidence of the *Banks/Clark* criteria exists on the available record, the petition must be denied because the validated felony murder special circumstance findings will preclude Thomas from making a prima facie case. But if sufficient evidence does not exist, or if there is no fuller record than we now have before us, an order to show cause must issue. (*Arias,* at p. 1006; see *Harris, supra,* 60 Cal.App.5th at pp. 959–960 [where record of conviction did not establish sufficient evidence under *Banks* and *Clark*, trial court was required to issue an order to show cause].)[13]

---

[13] On remand, "the trial court may take into account anything in the trial record the parties bring to its attention,[ ] but must disregard the prosecution's theories that [Thomas] was the [stabber] or acted with intent to kill." (*Secrease, supra,* 63 Cal.App.5th at p. 264, review granted, fn. omitted.) Because the jury rejected the first theory and did not necessarily adopt the second, these alternative theories "are not relevant at this stage" because they are not "irrefutably rebutted by the record of conviction." (*Ibid.*) Any argument that Thomas is liable for felony murder under section 189, subdivision (e)(2) on the basis that he aided and abetted the murder with intent to kill "raises contested issues of fact and must be addressed at an evidentiary hearing under section 1170.95, subdivision (d)(3)." (*Secrease,* at p. 265; see fn. 6, *ante.*)

## DISPOSITION

The order denying Thomas's resentencing position is reversed, and the matter is remanded for a resumption of proceedings under section 1170.95, subdivision (c) consistent with this opinion.

DATO, J.

WE CONCUR:

HALLER, Acting P. J.

GUERRERO, J.

18